UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

|  |  |
|---|---|
| JULIO MEDINA ARREGUIN, JUAN ARELLANO MALAGON, EDUARDO FLORES MAYDON, JOSE GOMEZ LOPEZ, MAXIMINO JUAREZ SANCHEZ, JOSE LOPEZ GOMEZ, CRUZ LUNA VILLELA, AGUSTIN OVIEDO OLVERA, LUIS PATINO MENDIOLA, ESGAR PEREZ FLORES, ASAEL RODRIGUEZ JUAREZ, MIGUEL SANCHEZ CERVANTES, and MARIO SILGUERO REYES, | : : : : : : : : : : : : : : : : : : : : : : |
| Plaintiffs, | |
| v. | |
| MANUEL SANCHEZ, | |
| Defendant. | |

Civil Action No.:

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.      Plaintiffs are guest workers from Mexico who were trafficked into the United States through the federal government's H-2A guest worker program, to work in Defendant's pine straw harvesting operations in South Georgia in 2018. They were recruited through false promises, defrauded out of hundreds of dollars in recruitment fees, coerced to work for little or no pay, and subjected to inhumane living conditions.

2.      Plaintiffs bring this action to vindicate their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the Trafficking Victims Protection Reauthorization Act of 2003 ("TVPRA"), 18 U.S.C. § 1595; and under Georgia contract and tort laws.

1

3.      Plaintiffs seek their unpaid wages, statutory liquidated damages, general and special damages, punitive damages, emotional distress damages, damages that arose from Defendant's breaches of contract, pre- and post-judgment interest, costs, and reasonable attorneys' fees.

## II. JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to:

      (a)      28 U.S.C. § 1331 (Federal Question);

      (b)      29 U.S.C. § 1337 (Interstate Commerce);

      (c)      29 U.S.C. § 216(b) (FLSA);

      (d)      18 U.S.C. § 1595(a) (TVPRA); and

      (e)      28 U.S.C. § 1367 (Supplemental).

5.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA and TVPRA claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

6.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)-(d), and S.D. Ga. Local Rule 2.1 because a substantial part of the events or omissions giving rise to the claim occurred in this district and division; and because Defendant is a resident of a county within this district and division.

## III. PARTIES

7.      At all times relevant to this action, Plaintiffs[1] were citizens of Mexico who were admitted into the United States on a temporary basis, to work for Defendant under the auspices

---

[1] Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Cruz Luna Villela, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, Miguel Sanchez Cervantes, and Mario Silguero Reyes.

of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. § 655.0, *et seq.* Their FLSA consent forms

are attached as part of composite Exhibit A.

8.      Defendant Manuel Sanchez is a resident of Jeff Davis County, Georgia.

9.      At all times relevant to this action, Defendant was a Farm Labor Contractor (FLC) in

that, for a fee, he recruited, solicited, hired, furnished, and/or employed workers.

10.     At all times relevant to this action, Defendant operated his farm labor contracting

business in South Georgia, including in Appling County and Jeff Davis County.

11.     At all times relevant to this action, Defendant was an employer of Plaintiffs, under the

FLSA, 29 U.S.C. § 203(g), in that he suffered or permitted Plaintiffs to work.

12.     Plaintiffs were economically dependent on Defendant for their wages.

13.     Plaintiffs were dependent on Defendant to provide them with employment, housing,

transportation, and the tools and equipment necessary to perform the work.

14.     Plaintiffs lived in housing provided by Defandant in Appling County and Pierce

County.

15.     Defendant had the power to hire and fire Plaintiffs and control their conditions of

employment.

16.     At all times relevant to this action, Defendant was an employer of Plaintiffs as

defined by the parties' employment contract. 20 C.F.R. § 655.103(b).

17.     Defendant had a place of business in the U.S., a means by which he could be

contacted for employment, and had a valid Federal Employer Identification Number.

18.     At all times relevant to this action, Defendant had the right to control the manner and

means by which Plaintiffs' work was accomplished.

3

19.     Under Defendant's employment, Plaintiffs were harvesting pine straw for sale in interstate commerce.

20.     Under Defendant's employment, Plaintiffs handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

**IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM**

21.     An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

22.     Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application must include a job offer, known as a "job order," which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers. *See* 20 C.F.R. § 655.103(b) (definition of "work contract").

23.     If an employer's job order meets the minimum federal regulatory requirements and is otherwise valid, U.S. worker availability is tested by use of the interstate Employment Service system[2] and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers

---

[2] Employment Service (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act. Employment services are delivered through a nationwide system of one-stop centers, and are managed by State Workforce Agencies (SWA's), and funded by the USDOL. *See* 20 C.F.R. § 651.10, (definition of "Wagner-Peyser Act Employment Service").

are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

24.     The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly-employed U.S. workers. 20 C.F.R. § 655.121(a)(3).

25.     The H-2A regulations require, in part, the following:

(a)  If the worker is paid by the hour, the employer must pay the worker at least the Adverse Effect Wage Rate ("AEWR"), or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l).

(b)  If the worker is paid on a piece rate basis and the worker's earnings do not result in average earnings of at least the AEWR, then the worker's pay must be supplemented so that the worker's earnings are at least as much as the worker would have earned had the worker been paid the AEWR. 20 C.F.R. § 655.122(l)(2)(i).

(c)  The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so that the workers can prepare their own meals. 20 C.F.R. § 655.122(g).

(d)  The employer must guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered. 20 C.F.R. § 655.122(i) (known as the "3/4 guarantee").

(e)  The employer must provide housing to the workers, free of charge, and the

housing must meet federal standards. 20 C.F.R. § 655.122(d).

(f)  The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to: field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; the hours actually worked each day by the worker; the time the worker began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages. 20 C.F.R. § 655.122(j)(1).

(g) The employer must furnish to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily. 20 C.F.R. § 655.122(k).

## V. STATEMENT OF FACTS

### Employment Contract

26.     On or around December 2017, Defendant submitted job order number 1824292922 (hereinafter, "the Job Order") to the Georgia Department of Labor and an Application for Temporary Employment Certification, (hereinafter, "the Application for Certification"), to the USDOL.

27.     The approved Job Order, (Attached as Exhibit B), included, but was not limited to, the following terms:

6

(a)  A prohibition against employers and its agents from seeking or receiving payment from any worker for application fees and recruitment costs. *See* 20 C.F.R. § 655.135(j).

(b)  Work to begin on February 10, 2018 and continue until December 1, 2018.

(c)  Anticipated hours of work of at least 36 hours per week.

(d)  Job duties to include raking and baling pine straw.

(e)  An hourly wage of not less than the AEWR,[3] or $10.95 per hour, and a piece rate of $1.00 per bale.

(f)  Weekly pay period, with wages to be paid every Saturday.

(g)  Free housing that met local, state and federal requirements, including adequate kitchen facilities with utensils to allow workers to cook their own meals.

(h)  Guaranteed employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours were not offered.

28.     The terms and conditions of the Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

29.     This job offer, when accepted, created a work contract between Defendant and each Plaintiff who accepted the offer.

30.     The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA and the TVPRA. *See* 20 C.F.R. § 655.135(e).

---

[3] Although the job order lists an hourly rate of $10.62, the applicable adverse effect wage rate ("AEWR") for 2018 was $10.95 per hour, see 82 Fed. Reg. 60628 (Jan. 4, 2018).

31.     By promising to pay the federally-mandated wage rate, Defendant also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

32.     On behalf of Defendant, Plaintiffs were recruited in their hometowns in Mexico, to work for Defendant under the terms of the Job Order.

33.     Plaintiffs accepted the offers of employment under the terms of the Job Order.

Pre-Employment Expenses

34.     Defendant recruited workers in Mexico, and required, as a condition of hire, that each Plaintiff pay a sum of money to him for travel to Georgia, visa expenses, and recruitment fees.

35.     In addition to the fees paid directly to Defendant, some Plaintiffs also paid for:

(a) Passports required to obtain an H-2A visa;

(b) Travel from their hometowns in Mexico to the U.S. Consulate in Monterrey, Mexico, for the interview necessary to obtain an H-2A visa; and

(c) Lodging expenses in Monterrey, while they completed visa application forms, attended consular interviews, and waited for the visa applications to be processed and for the visas to be issued.

36.     Plaintiffs entered the U.S. on or around February 22, 2018.

37.     The expenses described in paragraphs 34 and 35 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendant, as defined by 29 C.F.R. §§ 531.32(c) and 778.217.

38.     The expenses described in paragraphs 34 and 35 were made before receipt of Plaintiffs' first paychecks.

39.     Defendant did not reimburse Plaintiffs for any of the expenses described in paragraphs 34 and 35.

40.     Defendant's failure to reimburse Plaintiffs for these expenses brought Plaintiffs' first week wages below the federal minimum wage and the AEWR.

<u>Wages and Working Conditions</u>

41.     Plaintiffs worked for Defendant harvesting pine straw.

42.     The pine straw harvested by Plaintiffs under Defendant's employment was produced by the exploitation of natural resources or uncultivated natural growth, and was not an agricultural or horticultural commodity as defined by 29 C.F.R. § 780.112.

43.     Plaintiffs worked in excess of 40 hours during their first week of work, which began on February 27, 2018.

44.     Plaintiffs were not paid any wages for their first week of work.

45.     Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Maximino Juarez Sanchez, Agustin Oviedo Olvera, Luis Patino Mendiola, Asael Rodriguez Juarez, Miguel Sanchez Cervantes, and Mario Silguero Reyes were never paid any wages for their work.

46.     Plaintiffs Eduardo Flores Maydon, Jose Gomez Lopez, Jose Lopez Gomez, and Esgar Perez Flores were paid only some wages for their work.

47.     After the first workweek, Plaintiffs Eduardo Flores Maydon, Jose Gomez Lopez, Jose Lopez Gomez, and Esgar Perez Flores were paid solely on a piece-rate basis, such that they were paid according to the amount of bales of pine straw gathered, without regard to the number of hours worked.

48.     Defendant failed to pay Plaintiffs Eduardo Flores Maydon, Jose Gomez Lopez, Jose Lopez Gomez, and Esgar Perez Flores for all compensable hours worked, including for time spent doing tasks other than baling pine straw, such as raking pine straw.

49.     After the first workweek, Plaintiffs Eduardo Flores Maydon, Jose Gomez Lopez, Jose Lopez Gomez, and Esgar Perez Flores continued to work more than 40 hours per week in some of the weeks that they worked for Defendant.

50.     Plaintiffs' weekly earnings fell below the applicable federal minimum wage.

51.     Plaintiffs' weekly earnings fell below the contractually-promised wage of $10.95 per hour.

52.     Defendant did not supplement Plaintiffs' weekly earnings to ensure that they received the wages required by the FLSA and their employment contracts.

53.     Defendant failed to compensate Plaintiffs at one and a half times the regular rate of pay for the hours they worked in excess of 40 during a workweek.

54.     Defendant failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA, 29 C.F.R. § 516.2(a), and by the H-2A regulations, 20 C.F.R. § 655.122(j).

55.     Defendant did not provide Plaintiffs with complete and regular earning statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

56.     Defendant failed to offer Plaintiffs at least three-fourths of the workdays of the total work period advertised in the Job Order, as required by 20 C.F.R. § 655.122(i).

57.     Defendant did not supplement Plaintiffs' wages to ensure that they were compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order, as required by 20 C.F.R. § 655.122(i).

10

<u>Housing</u>

58.     Defendant housed Plaintiffs in a motel in Baxley, Georgia, that did not have enough beds, and the workers were forced to share beds or sleep on the floor.

59.     The motel where Plaintiffs lived did not have adequate kitchen facilities.

60.     Defendant did not provide Plaintiffs with meals.

61.     Defendant later moved Plaintiffs to a house in Blackshear, Georgia, that was not disclosed on the job order, was not inspected as required under the H-2A regulations, and did not comply with federal housing standards.

62.     All Plaintiffs, except for Miguel Sanchez Cervantes, stayed at the house in Blackshear.

63.     When Plaintiffs arrived at the house in Blackshear, it was dirty, filled with cockroaches, and spoiled food, which the Plaintiffs had to clean.

64.     The house in Blackshear was overcrowded.

65.     Some of the Plaintiffs were forced to sleep in sheds outside the house.

66.     The house and sheds did not have proper insulation, were exposed to the elements, had broken windows, and did not have a working heating system.

67.     During the time Plaintiffs were living at the Blackshear house, the temperature at night was often in the 30's, dipping as low as 31 degrees Fahrenheit.

68.     The house and sheds did not have any beds, pillows, bed sheets, or blankets. Defendant only provided Plaintiffs with bare mattresses on the floor.

69.     Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and

Mario Silguero Reyes suffered a physical impact and physical injuries from the extended exposure to cold temperatures, including: numbness, swollen throat, swollen lips, rashes, piloerection, red and itchy skin, difficulty sleeping, and pain in the extremities and face.

70.     As a result of the painful and/or uncomfortable physiological symptoms they experienced from the cold, Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Maximino Juarez Sanchez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and Mario Silguero Reyes suffered emotional distress, including stress, fear of getting sick, worry, sadness, anxiety, and sleeplessness.

71.     The house had one bathroom facility with only one sink, shower, and toilet, for more than 15 workers.

72.     There was not enough hot water, so Plaintiffs had to take cold showers.

73.     The workers had to buy their own water to drink because the water in the house had a foul smell and was not drinkable.

### Human Trafficking Scheme

74.     Plaintiffs were recruited by Defendant in Mexico.

75.     Plaintiffs are poor, and are from impoverished communities with limited employment opportunities.

76.     During recruitment, Defendant knowingly made false promises to Plaintiffs about the wages and working conditions of the offered employment.

77.     Defendant required all Plaintiffs to pay substantial recruitment fees, which he promised would cover all of their travel expenses.

78. Plaintiffs took out loans to pay the fees required by Defendant, and to pay the additional undisclosed travel expenses.

79. Even after taking out loans, Plaintiffs could not pay Sanchez's fees in full, and Sanchez informed them that they would be required to pay this debt to Sanchez with the wages they earned once in Georgia.

80. Plaintiffs Cruz Luna Villela, Juan Arellano Malagon, Eduardo Flores Maydon, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Miguel Sanchez Cervantes, and Mario Silguero Reyes told Defendant that they had to take out loans to pay the fees Defendant charged.

81. After making payments to Defendant, Plaintiffs still had to pay additional expenses in order to travel to Georgia to work.

82. When Plaintiffs arrived in Georgia, Defendant housed Plaintiffs in inhumane conditions, as described in paragraphs 58 through 73.

83. Plaintiffs performed work for Defendant without compensation.

84. Because Defendant did not pay Plaintiffs their wages, and because they had to pay for additional undisclosed travel expenses, Plaintiffs soon ran out of money.

85. Plaintiffs went hungry, had to ration their food and, eventually, rely on charity from a church nearby.

86. Defendant threatened or caused Plaintiffs to be threatened with deportation if they left his employment.

87. Defendant threatened Plaintiffs that those who left his employment would be unable to return to the United States with another H-2A visa in the future.

13

88.     Plaintiffs continued to work for Defendant and/or returned to work for Defendant because they feared being unable to repay the loans he induced them to take, and/or they feared being deported, and/or they feared being unable to return to the United States with an H-2A visa in the future.

89.     When Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Maximino Juarez Sanchez, and Luis Patino Mendiola decided to leave Defendant's employment, Defendant threatened that they would be deported or would be unable to return to the United States if they did not continue to work for Defendant.

90.     When Plaintiffs left Defendant's employment, they still owed significant amounts of money on their loans.

## COUNT I: FAIR LABOR STANDARDS ACT- MINIMUM WAGE

91.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

92.     Defendant failed to pay Plaintiffs at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

93.     The violations set forth in this Count resulted, in part, from Defendant's failure to pay Plaintiffs for their first week of work.

94.     The violations set forth in this Count resulted, in part, from Defendant's failure to reimburse the expenses described in paragraphs 34 and 35, which Plaintiffs incurred primarily for the benefit of Defendant. These expenses brought Plaintiffs' earnings below the required minimum hourly wage rate.

95.     The violations set forth in this Count also resulted, in part, from Defendant's failure

to compensate Plaintiffs for the time they spent performing tasks other than baling pine straw.

96.    The violations set forth in this Count also resulted, in part, from Defendant's failure to supplement Plaintiffs' piece-rate wages to equal or exceed the federal minimum wage.

97.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendant's violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the applicable minimum wage.

## COUNT II: FAIR LABOR STANDARDS ACT- OVERTIME

98.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

99.    As detailed in paragraphs 41 to 53, Defendant failed to pay Plaintiffs at least the required hourly wage of one and a half times the regular rate of compensation for every compensable hour of labor performed in a workweek in excess of 40 hours, as required by 29 U.S.C. § 207(a).

100.    The violations set forth in this Count resulted, in part, from Defendant's failure to compensate Plaintiffs for the first week of work described in paragraphs 43 and 44.

101.    The violations set forth in this Count resulted, in part, from Defendant's failure to compensate Plaintiffs for all hours of work as described in paragraphs 43 to 53.

102.    The violations set forth in this Count also resulted, in part, from Defendant's failure to supplement Plaintiffs' piece-rate wages to equal or exceed the federal minimum wage.

103.    Pursuant to 29 U.S.C. § 216(b), as a result of Defendant's violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid overtime compensation and an equal amount as liquidated damages for each workweek in which they were

15

suffered or permitted to work at Defendant's operations and during which they were not compensated at one and one-half their regular rate for hours worked in excess of 40.

### <u>COUNT III: BREACH OF CONTRACT – WAGE PROVISIONS</u>

104.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

105.    Defendant offered employment on the terms and conditions set out in the Job Order and as described in paragraphs 27 to 31.

106.    Plaintiffs accepted Defendant's offers.

107.    Among the terms that Defendant offered and Plaintiffs accepted were promises to:

(a)  Pay the applicable AEWR for each hour worked. 20 C.F.R. § 655.122(l).

(b)  Pay Plaintiffs weekly, on Saturday.

(c)  Guarantee employment for a total number of work hours equal to at least three-fourths of the workdays of the total work period advertised in the Job Order, or the monetary equivalent if the hours are not offered. 20 C.F.R. § 655.122(i)

(d)  Furnish to Plaintiffs on each pay period a written earning statement accurately showing the total earnings for the pay period, hourly rate and piece rate of pay, hours of employment offered, hours actually worked, itemization of all deductions from wages, the units produced each day, beginning and ending dates of the pay period, and the employer's name, address, and federal employer identification number. 20 C.F.R. § 655.122(k).

108.    Defendant failed to pay Plaintiffs at least the AEWR of $10.95 per hour, as described in paragraphs 38 to 40 and 43-52.

109.    Defendant failed to pay Plaintiffs every Saturday as required by the contract, as described in paragraph 44.

110.    Defendant did not offer at least three-fourths of the workdays of the total work period advertised in the Job Order.

111.    Defendant did not supplement Plaintiffs' wages to ensure that they were compensated for at least three-fourths of the workdays of the total work period advertised in the Job Order, as required by 20 C.F.R. § 655.122(i).

112.    Defendant failed to maintain earning records, in violation of 20 C.F.R. § 655.122(j).

113.    Defendant failed to furnish to Plaintiffs on each pay period a written earning statement, in violation of 20 C.F.R. § 655.122(k).

114.    Defendant, therefore, breached their employment contracts with Plaintiffs.

115.    As a direct consequence of Defendant's breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

116.    Defendant is liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendant's breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## COUNT IV: BREACH OF CONTRACT – HOUSING

117.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

118.    Defendant offered employment on the terms and conditions set out in the Job Order and as described in paragraphs 27 to 31.

119.    Among the terms that Defendant offered and Plaintiffs accepted were promises to:

(a) Provide free housing with kitchen facilities that met local, state and federal requirements. 20 C.F.R. § 655.122(d).

17

(b) Provide meals or adequate kitchen facilities with utensils to allow workers to cook their own meals. 20 C.F.R. § 655.122(g).

120.    Plaintiffs accepted Defendant's offers.

121.    Defendant failed to provide free housing that met local, state and federal requirements, as described in paragraphs 58 to 73.

122.    Defendant failed to provide Plaintiffs with adequate kitchen facilities or meals.

123.    The violations set forth in this Count resulted, in part, from Defendant failure to provide adequate food storage and prepping facilities.

124.    The violations set forth in this Count resulted, in part, from Defendant's failure to provide housing that was clean, sanitary, and free of trash, rodents and pests.

125.    The violations set forth in this Count resulted, in part, from Defendant's failure to provide adequate heating.

126.    The violations set forth in this Count resulted, in part, from Defendant's failure to provide protection against the elements.

127.    The violations set forth in this Count also resulted, in part, from Defendant's failure to provide housing that was not overcrowded.

128.    The violations set forth in this Count also resulted, in part, from Defendant's failure to provide beds for each worker.

129.    The violations set forth in this Count resulted, in part, from Defendant's failure to provide enough toilets and showers for Plaintiffs.

130.    The violations set forth in this Count also resulted, in part, from Defendant's failure to provide sufficient hot water for bathing.

18

131.     The violations set forth in this Count also resulted, in part, from Defendant's failure to provide sufficient potable water for drinking.

132.     Defendant, therefore, breached his employment contract with Plaintiffs.

133.     As a direct consequence of Defendant's breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

134.     Defendant is liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendant's breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

## COUNT V: TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2003 – (TVPRA)

135.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

136.     This Count sets forth a claim by Plaintiffs against Defendant Manuel Sanchez under the civil remedies provision of the TVPRA (18 U.S.C. § 1595), for trafficking with respect to involuntary servitude, forced labor, and attempted forced labor. *See* 18 U.S.C. §§ 1590, 1581, 1584, 1589, and 1594.

137.     Defendant knowingly recruited and obtained Plaintiffs' labor or services, as set forth in paragraphs 74-77 and 83.

138.     Defendant knowingly provided or obtained Plaintiffs' labor or services, or attempted to do so, by:

>    (a) serious harm or threats of serious harm; and/or

>    (b) abuse or threatened abuse of law or legal process; and/or

(c) a scheme intended to cause Plaintiffs to believe that if they did not perform labor or services for Defendant, they would suffer serious harm or physical restraint.

139.     Defendant knowingly induced Plaintiffs to take out loans to pay recruitment fees, as described in paragraphs 75 through 81, to compel Plaintiffs or to attempt to compel Plaintiffs to continue working for Defendant in order to pay off their loans.

140.     Defendant threatened Plaintiffs with deportation, as described in paragraphs 86 to 89, to prevent or to attempt to prevent them from leaving.

141.     Defendant threatened that those who left his employment would be unable to return to the United States with an H-2A visa.

142.     Defendant subjected Plaintiffs to deplorable housing, and gave them little to no pay, and Plaintiffs endured extreme cold temperatures and went hungry, as described in paragraphs 58 to 73, and paragraphs 82 to 85.

143.     As a result of Defendant's violations as set forth in this count, Plaintiffs seek actual, punitive, and emotional distress damages.

## COUNT VI: NEGLIGENCE

144.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

145.     Defendant owed Plaintiffs a duty to provide adequate housing that complied with federal housing laws and their employment contracts, and a duty of reasonable care.

146.     Defendant breached his duty by placing Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and Mario Silguero Reyes in substandard housing that did not

have heat or protection from the elements, in violation of 29 C.F.R. § 1910.142(b)(11), (f)(4), 20 C.F.R. § 654.409(a), 29 C.F.R. § 1910.142(b)(1), and 20 C.F.R. § 654.407(a).

147.    Defendant breached his duty of reasonable care by failing to provide Plaintiffs with adequate insulation, heat, sheets and blankets.

148.    As a result of Defendant's breaches, Plaintiffs were forced to sleep in 30-degree temperatures for several nights.

149.    Defendant's breaches caused Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and Mario Silguero Reyes to suffer damages, including emotional distress, as described in paragraph 70.

150.    Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and Mario Silguero Reyes were physically impacted by the cold air as a result of Defendant's breaches.

151.    Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and Mario Silguero Reyes were physically injured by the cold, as being forced to sleep in cold weather without any heat or protection caused them painful and/or uncomfortable physiological symptoms, as described in paragraph 69.

152.     Defendant's conduct in knowingly placing Plaintiffs in a house that had broken windows, and no heat, insulation, or blankets, in violation of law, was intended to harm Plaintiffs or was in reckless disregard of the consequences, and thus was willful, wanton, or malicious and directed at Plaintiffs.

153.     Plaintiffs Cruz Luna Villela, Julio Medina Arreguin, Juan Arellano Malagon, Eduardo Flores Maydon, Jose Gomez Lopez, Maximino Juarez Sanchez, Jose Lopez Gomez, Agustin Oviedo Olvera, Luis Patino Mendiola, Esgar Perez Flores, Asael Rodriguez Juarez, and Mario Silguero Reyes are therefore entitled to damages caused by Defendant's breach, including damages for emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)     Grant judgment against Defendant, in favor of each Plaintiff, in the amount of their respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

(b)     Grant judgment against Defendant, in favor of each Plaintiff, in the amount of each Plaintiff's damages as they arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(c)     Grant judgment against Defendant, in favor of each Plaintiff, in the amount of their compensatory damages for Defendant's violations of the TVPRA as proved at trial, including the promised contractual hourly wage for Plaintiffs' work, as well as punitive damages, and damages for the emotional harm that Defendant's TVPRA violations caused;

(d)     Grant Judgment against Defendant, in favor of each Plaintiff, in the amount of Plaintiffs' damages, including general, special, and emotional distress damages, caused by Defendant's negligence and/or willful, wanton, or malicious conduct.

(e)     Award Plaintiffs pre- and post-judgment interest as allowed by law;

(f)     Award Plaintiffs attorney's fees and the costs of this action; and

(g)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

This 1st day of November, 2018.          Respectfully submitted,

*/s/ Solimar Mercado-Spencer*
Solimar Mercado-Spencer
Lead Counsel
Georgia Bar No. 686614
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623
E-mail: smercado-spencer@glsp.org

*/s/ Lisa J. Krisher*
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623
E-mail: lkrisher@glsp.org

*Attorneys for Plaintiffs*